MATTHEW E. PANGBURN, PROSECUTOR, v. OCEAN CITY POLICE AND FIREMEN'S PENSION FUND COMMISSION, DEFENDANT.

Submitted May 6, 1947—Decided February 3, 1948.

Before Justices DONGES, COLIE and EASTWOOD.

For the prosecutor, *Albert M. Ash.*

For the defendant, *John E. Boswell.*

The opinion of the court was delivered by

DONGES, J. *Certiorari* was allowed to review the action of the defendant in denying prosecutor's application to be retired from the police department on pension.

Prosecutor was employed as a member of the police department of the City of Ocean City on June 9th, 1924, as a patrolman. He reported for duty on that day and continued such service until June 13th, 1946. On April 24th, 1944, he applied for pension alleging his right to pension by reason of having served "for a period of 20 years and having attained the age of 50 years, to wit, the age of 53 years." On May 17th, 1944, the application was denied by the Police and Firemen's Pension Fund. On February 1st, 1946, prosecutor made application for retirement on pension. In each instance, prosecutor based his application on chapter 160 of the laws of 1920 (*R. S.* 43:16-1).

The defendant urges that prosecutor is not entitled to retirement because of several suspensions during the years of his service. The record discloses that he was suspended on five occasions. Four suspensions were for short periods, varying

from two days as a minimum and fifteen days as a maximum suspension. The fifth suspension appears to have been for an indefinite time, and appears to have run from February 16th,' 1929, to July, 1931. The municipal commission, on the advice of the city solicitor, denied the application on the ground that prosecutor had not honorably served the twenty years required by the statute. There is no question that he had reached the required age.

The record does not disclose the reasons for the several suspensions. No claim is made that any of the grounds for suspension involved charges preferred against prosecutor or that any offense involving moral turpitude was alleged.

As stated, the record is silent as to the cause for the disciplinary actions resulting in the various suspensions suffered by the prosecutor. In any event, they were not of such serious character as to call for the dismissal of prosecutor, since he was re-instated each time. When he was re-instated after the long suspension it was upon the occasion of the withdrawal from the service of a man who was sick, which suggests that the prolonged suspension might have been occasioned, in part at least, by lack of need for the services of prosecutor.

From the scanty and inadequate record it cannot be determined that prosecutor was guilty of conduct rendering him guilty of dishonorable service. He had been a member of the police force for a period of twenty years when the act of 1944 became effective. *Prima facie* he was entitled to a pension and the burden of proving dishonorable service rests upon the defendant. The statute clearly indicates that the policy, as set by the legislature, is not to consider conduct in violation of departmental rules as amounting to dishonorable conduct, because *R. S.* 43:11–1 provides that such violations, although punishable by fine, reprimand or dismissal, shall not deprive a member of the police or fire department of his pension privileges. *Plunkett* v. *Board of Pension Commissioners of the City of Hoboken,* 113 *N. J. L.* 230; affirmed, 114 *Id.* 273. It follows, therefore, that there being no showing of dishonorable conduct, prosecutor's right to pension cannot be denied on that ground.

*R. S.* 43:11-2 provides: "When a member of the police department in any municipality has been removed from employment therein without charges being preferred against him, or has been removed from employment by reason of the disbanding of a police department, and has subsequently been re-instated, the time elapsed between such removal and reinstatement shall be computed as time in actual service in determining his right to retirement from service in the department." It would appear, therefore, in the absence of disclosure of any charges and hearings, or evidence of any conduct involving mortal turpitude or dishonor, that this act applies. The prosecutor having presented a *prima facie* case, the burden is upon the defendant to overcome the existent presumptions. As was said in *Murley* v. *Township of Raritan,* 117 *N. J. L.* 357, "The officer was not removed from office but suspended in its exercise. He is still a policeman holding his office subject to the suspension."

We conclude, therefore, that prosecutor showed twenty years of service within the statutory requirements, nothing appears to the contrary, and prosecutor is entitled to judgment. The action of the defendant in denying prosecutor's claim for pension is hereby set aside, with costs.

EASTWOOD, J. (Dissenting.) I have concluded that I cannot agree with the opinion of the majority in this case on the question of the legal effect of the four suspensions imposed upon the prosecutor, constituting a portion of the time embraced in prosecutor's claim for his right to pension. My reasons for reaching this conclusion are stated as follows:

Prosecutor, Matthew E. Pangburn, seeks to review by *certiorari* the action of the Ocean City Police and Firemen's Pension Fund Commission in denying his application to be retired on pension. He first applied for a pension on April 24th, 1944, and again on February 1st, 1946. For the purpose of decision the latter application of February 1st, 1946, is the only application that need be considered.

Pangburn was originally employed as a member of the police department of the City of Ocean City on June 9th, 1924, as a patrolman and reported for duty on that date. It

appears from the record that from the time of Pangburn's original employment until July 1st, 1944, he was suspended from active duty on five separate occasions. Four of these suspensions are for comparatively short periods of two to fifteen days each. A fifth suspension, which was for an indefinite period, ran from February 16th, 1929, to July, 1931, a period of approximately two years and four months. Prosecutor's application for pension was denied by the municipal pension commission pursuant to the advice of the city solicitor, on the grounds that prosecutor had not honorably served the requisite period of time under the controlling statutes.

A review of the controlling statutes involved will not be amiss. *Pamph. L.* 1920, *ch.* 160 as amended by *Pamph. L.* 1938, *ch.* 104, embodied in *R. S.* 43:16–1 provides in effect that members of the Pension Fund may apply for retirement on pension at half pay after honorably serving for a period of twenty years and attaining the age of fifty years. *R. S.* 43:16–1 was amended by *Pamph. L.* 1944, *ch.* 253, effective July 1st, 1944. As amended the statute provides for retirement on pension after serving honorably for a period of twenty-five years and attaining the age of fifty-three years. (This act was further amended by *Pamph. L.* 1947, *ch.* 234, effective June 2d, 1947. By the latter amendment the age qualification was reduced to fifty-one years.) The age qualification of the applicant is not in dispute.

It is elementary that membership in a pension fund creates no vested or contractual rights. *Laden* v. *Daly,* 132 *N. J. L.* 440; 40 *Atl. Rep.* (*2d*) 780; *affirmed,* 133 *N. J. L.* 314; 44 *Atl. Rep.* (*2d*) 212. The legislature was thus at liberty and within its prerogative of changing or modifying the qualifications of prospective applicants for pension as it might deem advisable. It is urged by prosecutor that the several periods of suspension did not operate to exclude him from the benefits of the statute. Prosecutor argues that a public officer "serves" as long as he holds office and that his suspensions did not operate to remove him from office. In short, it is contended that Pangburn, as a policeman, held his office subject only to the suspensions and that his period of service

was not interrupted thereby. On the other hand, it is contended by the defendant that Pangburn's suspensions, particularly that which covered a period of more than two years, constituted an interruption of service and accordingly his period of honorable service fell considerably short of the required period.

We have carefully considered the factual situation and arguments of counsel in support of their respective contentions and conclude that the prosecutor had not on either of the dates of his applications for pension, to wit: on April 24th, 1944, and on February 1st, 1946, met the statutory requirements with regard to the required period of honorable service. Disregarding four of the various suspensions and considering only the suspension commencing on February 16th, 1929, and continuing for a period in excess of two years, it is palpably evident that prosecutor's period of honorable service falls considerably short of the required twenty year period fixed by the statute of 1920 and likewise short of the twenty-five year period of service required by *Pamph. L.* 1944, *ch.* 253. As stated by Mr. Justice Heher, in *Plunkett* v. *Board of Pension Commissioners of the City of Hoboken,* 113 *N. J. L.* 230; 173 *Atl. Rep.* 923; *affirmed,* 114 *N. J. L.* 273; 176 *Atl. Rep.* 341:

"The legislative purpose is not open to doubt. The statutory scheme is to make retirement compulsory at the age of sixty-five years [now reduced], and optional with the member after he has reached the age of fifty years [now modified], unless he shall sooner sustain 'permanent disability in the performance of his duty,'" * * * "'Retirement' connotes membership surrendered or lost at the instant of time it becomes effective. Moreover, honorable service is a *sine qua non.* The underlying considerations for this policy are manifest. A contrary policy would make for departmental inefficiency. The inducement for efficient and conscientious service, after the member attained the age of fifty years, would be immeasurably lessened, if he could, in the event of a conviction of charges of misconduct, insist that his dismissal be accompanied by the statutory pension. It is not incumbent upon a municipality, or other division of govern-

ment, to establish a system of pensions. It is rather a question of public policy. * * * And that being so, it goes without saying that one of its fundamental purposes is to secure good behavior and the maintenance of reasonable standards of discipline during service." (Brackets ours.)

It is clear that the act contemplates and imposes as a *sine qua non* to a pension the requirement that the applicant's service be "honorable." Although we are not informed by the record what was the precise nature of the offenses for which prosecutor was suspended, we conclude that the particular suspension of prosecutor for an indefinite period and which actually exceeded a period of two years—(and which was not appealed by prosecutor)—was of such magnitude as to destroy the "honorable" character of prosecutor's service as defined in *Plunkett* v. *Board of Pension Commissioners of the City of Hoboken, supra*. To hold otherwise would be to say that any suspension, regardless of the length of its duration, would have no effect upon the continuity of a public officer's term of service. Under such an interpretation, a period of suspension running five, ten or more years could be said not to bar a public officer from obtaining a pension. We do not think that the legislature had any such intention in mind when enacting the statutes applicable here. To so hold would be completely to destroy the theory of public policy underlying all pension plans.